# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

ERIC SCHORLING
     Petitioner,

v                                        Civil Action No.

                                             HON.

MILLICENT WARREN,
     Respondent.

_____/

# BRIEF IN SUPPORT OF
# PETITION FOR WRIT OF HABEAS CORPUS

**ARTHUR GARTON P-37482**
Trial Attorney for Petitioner
38550 Garfield, Suite A.
Clinton Twp., MI 48038
(586) 226-3100

**ROSEMARY GORDON PÁNUCO (Mich. Bar. No. P-33275)**
Attorney for Eric Schorling
7320 N. LaCholla Blvd., Suite 154, PMB #310
Tucson, AZ 84741-2354
(520) 797-6928
appeals1@aol.com

1

# TABLE OF CONTENTS

Index of Authorities.................................................................………..   3

Statement of Question Presented .......................………………………   5

Statement of the Case……………………………………………………   5

Statement of Facts.........................…………………………………   7

Argument:

       **A criminal defendant has the fundamental right to
present a defense under the Fourteenth Amendment due
process clause.  Schorling sought to present two defenses
to the specific intent element.  One, he lacked the physical
ability to form the specific intent required.  Two, he acted
because he was the victim of teenage bullying.  By
denying him the ability to present defenses to the
prosecution's proof that he intended to murder Lambert
when he assaulted her, the Michigan courts violated his
due process rights.**

      ………………………………………………………………………   9


Relief.........................................................................…   23

# INDEX OF AUTHORITIES

## CASES

*Crane v Kentucky,*
    476 U.S. 683; 106 S.Ct. 2142; 90 L.Ed.2d 636 (1986)………………………    12

*Eddings v Oklahoma,*
    455 U.S. 104; 102 S.Ct. 869; 71 L.Ed.2d 1 (1982)………………………….    14

*Fisher v United States,*
    328 U.S. 463; 66 S.Ct. 1318; 90 L.Ed. 1382 (1946)……………………….. 20, 21, 22

*Hendershott v People,*
    653 P.2d 385 (Colo. 1982)…………………………………………………….  20, 21

*In Re Winship,*
    397 U.S. 358; 90 S.Ct. 1068; 25 L.Ed.2d 368 (1970)………………………  12, 21

*Johnson v Texas,*
    509 U.S. 350; 113 S.Ct. 2658; 125 L.Ed.2d 290 (1993)……………………    14

*Martin v Ohio,*
    480 U.S. 228; 107 S.Ct. 1098; 94 L.Ed.2d 267 (1987)……………………..    21

*People v Carpenter,*
    464 Mich. 223; 627 NW2d 276 (2001)…………………………………..19, 20, 21, 22

*People v Wilson,*
    194 Mich.App. 599; 487 NW2d 822 (1992)………………………………..  17, 18

*Roper v Simmons,*
    543 U.S. 551; 125 S.Ct. 1183; 161 L.Ed.2d 1 (2005)……………………… 13, 14, 15

*Thompson v Oklahoma,*
    487 U.S. 815; 108 S.Ct. 2687; 101 L.Ed.2d 702 (1988)……………………    14

*United States v Scheffer,*
    523 U.S. 303; 118 S.Ct. 1261; 140 L.Ed.2d 413 (1998)……………………    12

*Washington v Texas,*
    388 U.S. 14; 87 S.Ct. 1920; 18 L.Ed.2d 1019 (1967)………………………    12

*Williams v Taylor,*
    529 U.S. 362; 120 S.Ct. 1495; 146 L.Ed.2d 389 (2000)……………………    12

## INDEX OF AUTHORITIES - continued

**STATUTES**

28 U.S.C. § 2254(a)……………………………………………………..        11

MCL 750.83……………………………………………………………..        13


**CONSTITUTIONAL PROVISIONS**

Fourteenth Amendment, U.S. Constitution……………………………………   5, 9, 10, 19

## STATEMENT OF QUESTION PRESENTED

**A criminal defendant has the fundamental right to present a defense under the Fourteenth Amendment due process clause. Schorling sought to present two defenses to the specific intent element. One, he lacked the physical ability to form the specific intent required. Two, he acted because he was the victim of teenage bullying. By denying him the ability to present defenses to the prosecution's proof that he intended to murder Lambert when he assaulted her, did the Michigan courts violated his due process rights?**

## STATEMENT OF THE CASE

The prosecutor charged Eric Schorling with Assault with Intent to Murder, Carrying a Concealed Weapon, and Carrying a Weapon with Unlawful Intent. Prior to trial, the prosecutor dismissed the assault with a dangerous weapon count. After trial, Schorling pled guilty to carrying a weapon with unlawful intent and carrying a concealed weapon. The case went to the jury on the remaining count of Assault with Intent to Murder.

Schorling's jury trial was held in October, 2005 in the Macomb County Circuit Court, the Honorable Peter J. Maceroni, presiding. The jury convicted Schorling of Assault with Intent to Murder. Judge Maceroni sentenced him to 10 to 15 years imprisonment on the Assault with Intent to

Murder conviction and 1 to 5 years imprisonment on each of the weapons offenses.

Schorling appealed as of right to the Michigan Court of Appeals.  The Court of Appeals affirmed his conviction in an unpublished opinion released July 19, 2007. *People v Schorling*, No. 268026 (Mich. Ct. App. July 19, 2007).

Petitioner Schorling filed a timely Application for Leave to Appeal with the Michigan Supreme Court.  On November 29, 2007, that Court denied leave to appeal. *People v Schorling*, No. 134839 (Mich. S.Ct. November 29, 2007).

## STATEMENT OF FACTS

At trial there was no dispute that on September 27, 2004 at the Romeo High School 16 year-old Eric Schorling stabbed Nichol Lambert with a large kitchen knife. (II, 11-12, 20-22, 87-89, 104-106, 112, 174-175).[1]  The sole issue at trial was Schorling's intent when he stabbed Lambert. (I, 138-144).[2] The prosecutor presented the testimony of Lindsey Gibson who said that 2 days before the stabbing she witnessed an incident between Schorling and Lambert at Croswell Elementary School. (II, 74-83).  Lambert screamed that she hated Schorling, called him a Nazi, and hoped he would die. (II, 79). Schorling replied that he was going to kill Lambert. (II, 80).  Stacey Palmer remembered seeing Schorling giving his stuff away the day before the incident because he was going to jail for a long time. (II, 85-87).  She also said that on the day of the stabbing, Schorling told her he had to do it. (II, 97).

To rebut the prosecutor's evidence of intent, defense counsel sought to introduce evidence through Dr. Abramsky that Schorling was physically unable to form the specific intent to murder because his frontal lobes were not sufficiently developed. (I, 5, 9-11).  Defense counsel also sought to introduce the testimony of Professor Glen Stutsky from Michigan State University, who

---

[1]  II refers to pages in Volume II of the trial transcript dated October 26, 2005.
[2]  I refers to pages in Volume I of the trial transcript dated October 25, 2005.

is an expert in teenage bullying, to show that Schorling acted from a

perception that unless he did something, the bullying would not stop. (I, 14-

15, 18-19).  The trial court denied both requests.

Additional facts will be added as necessary to the arguments.

# ARGUMENT

**A criminal defendant has the fundamental right to present a defense under the Fourteenth Amendment due process clause.  Schorling sought to present two defenses to the specific intent element.  One, he lacked the physical ability to form the specific intent required.  Two, he acted because he was the victim of teenage bullying.  By denying him the ability to present defenses to the prosecution's proof that he intended to murder Lambert when he assaulted her, the Michigan courts violated his due process rights.**

The trial court refused to allow Schorling's defense counsel to present any defense to the element of specific intent to murder for the charge that he assaulted Lambert with the intent to murder her.  He sought to introduce evidence that Schorling was physically incapable of forming the specific intent to murder required for Assault with Intent to Murder. (I, 13).  And he sought to introduce evidence that Schorling was the victim of teenage bullying and acted as a result of his victimization. (I, 19).  The first defense would have attacked the specific intent element directly and the second would have challenged the specific intent by giving the jury a context within which they could evaluate Schorling's mindset when he stabbed Lambert.  By ruling that the defense could not present evidence on either the physical inability to form the specific intent or the teenage bullying evidence, the trial court robbed Schorling of the ability to present any defense to the specific intent element.

The Fourteenth Amendment's Due Process Clause[3] gives all criminal

defendants the right to present a defense to the charges against him or her.  In

this case the Michigan courts unreasonably applied federal constitutional law

to violate Schorling's federal constitutional right to present a defense.

Therefore, he is entitled to a write of habeas corpus.

## Standard of Review

The standard of review in habeas cases is defined in 28 U.S.C. §

2254(d):

> "An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding."

A state court's decision is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law.  It is also "contrary to" clearly established federal

law if the state court decides a case differently than the Supreme Court has on

---

[3]   United States Constitution.

10

a set of materially indistinguishable facts. *Williams v Taylor*, 529 U.S. 362, 405-406 (2000).   An "unreasonable application" occurs when "a state court decision unreasonably applies the law of the Supreme Court to the facts of the petitioner's case. *Williams*, at 409.

### Issue Preservation

Schorling listed the pertinent witnesses for each defense on his witness list.  Schorling's response to the prosecutor's motion in limine to prohibit Petitioner from presenting a mental defect defense other than insanity included the federal due process right to a defense argument.  In addition, he argued the due process violation regarding both defenses prior to the trial and after the close of the proofs. (II, 5, 9-11, 14-15, 18; IV, 9-11). [4]

In the Court of Appeals and the Michigan Supreme Court, Schorling argued that his Fourteenth Amendment rights were violated when the trial court prohibited him from calling Dr. Abramsky to testify that his frontal lobes were not fully developed and therefore he could not form the specific intent necessary to be convicted of assault with intent to murder.  He also argued that his Fourteenth Amendment rights were violated when he was precluded from presenting evidence that he was the victim on teenage

---

[4]   IV refers to pages in Volume IV of the trial transcript dated October 28, 2005.

bullying.  Therefore the federal constitutional issue was fairly presented to the state courts.

## Right to Present a Defense

A criminal defendant has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the Fourteenth Amendment's guarantee of due process of law. *Washington v Texas*, 388 U.S. 14, 19 (1967).  When rules excluding evidence infringe on a weighty interest of an accused or significantly undermine a fundamental element of the defense, the accused's right to present a defense is violated. *United States v Scheffer*, 523 U.S. 303, 308 (1998).   Moreover, a defendant's right to have a fair opportunity to present a defense can be violated by a blanket exclusion of evidence. *Crane v Kentucky*, 476 U.S. 683, 687 (1986).  In this case, the trial court denied Schorling the opportunity to challenge the state's proof concerning an essential element of the crime charged – the intent to murder. By precluding the defense witnesses, the Michigan courts violated Schorling's federal constitutional right to due process.

The prosecutor must prove beyond a reasonable doubt each element of the charged offense. *In Re Winship*, 397 U.S. 358, 363-364 (1970).  For the offense of Assault with Intent to Murder, the prosecutor must prove that a

defendant intended to murder the victim when he/she assaulted that victim.

MCL 750.83.  The defenses Schorling sought to present would have

challenged the prosecution's proof of that specific mens rea.

### Schorling physically lacked the ability to form the specific intent

Schorling's defense was that due to his age (16 years old) he did not

have the physical capacity to form the specific intent to murder.  Dr.

Abramsky would have testified that adolescents do not have fully developed

frontal lobes. (I, 10-11).  This lack of development leads to greater

impulsivity, difficulties in concentration, attention, and self monitoring, as

well as impairing decision making.[5]  Underdeveloped frontal lobes cause

adolescents to have significant problems with making decisions that are in the

teen's long term best interests.  The United States Supreme Court in *Roper v*

---

[5]   There is a significant body of scientific evidence demonstrating that
teenagers do not have developed frontal lobes and that this lack of development
affects a teenager's ability to make decisions, solve problems and understand
the future consequences of present actions.   See e.g.: "Inside the Teenage
Brain,"
www.pbs.org/wgbh/pages/frontline/shows/teenbrain/intervies/todd.html, (teen
brains actually work differently than adults when processing emotional
information from external stimuli); "Decision –making is Still a Work in
Progress for Teenagers," www.brainconnection.com/topics/?main=news-in-
rev/teen-frontal, (while adults can use rational processes when facing emotional
decisions teenagers are simply not yet equipped to think through things in the
same way); "Teenage Brain: A Work in Progress,"
www.nimh.nih.gov/publicat/teenbrain.cfm, (National Institute of Mental
Health); and "Teen Brains on Trial,"
www.sciencenews.org/articles/20040508/bob9.asp.

*Simmons*, 543 U.S. 551, 569-570 (2005) noted that there are three general differences between juveniles under 18 and adults.  "First, as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  These qualities often result in impetuous and ill-considered actions and decisions.'" *Roper*, at 569, quoting *Johnson v Texas*, 509 U.S. 350, 367 (1993).  Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Roper*, at 569, citing *Eddings v Oklahoma*, 455 U.S. 104, 115 (1982).  Third, "the character of a juvenile is not as well formed as that of an adult." *Roper*, at 570.  The *Roper* Court found that, "[T]he susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.'" *Roper*, at 570, quoting *Thompson v Oklahoma*, 487 U.S. 815, 835 (1988).  While the discussion of the differences between juveniles and adults in the *Roper* case was in the context of deciding whether the death penalty was constitutional for juveniles, it demonstrates that the United States Supreme Court has recognized

14

that the mens rea of a juvenile is significantly different from an adult's mens rea.

Testimony about adolescent frontal lobe development is the mens rea evidence that Schorling sought to have the jury consider when it decided whether he formed the specific intent to murder Lambert.  Adolescent frontal lobe development is not a mental illness nor is it mental retardation.  It is evidence of a physical condition that impacts on an adolescent's thought process and ability to form criminal intent.  This is important evidence that would have challenged the prosecutor's proofs regarding Schorling's intent because it would have put Schorling's statements and actions in the context of a 16-year-old's thought process.  The *Roper* court acknowledged the "overwhelming weight of international opinion against the juvenile death penalty, rest[s] in large part on the understanding that the instability and emotional imbalance of young people may often be a factor in the crime. *Roper*, at 578.  The defense evidence would have given the jury the information it needed to understand Schorling's adolescent mind and how that immature mind impacted on his ability to form the specific intent to murder. The Michigan trial court's decision unreasonably applied federal law and

deprived Schorling of his constitutional right to present a defense as did the appellate courts decisions upholding his conviction.

### Schorling acted out because he felt helpless due to teenage bullying

Teenage bullying is the process where a teenager, who is the victim of bullying, becomes consumed by the feeling of helplessness until he/she cannot tolerate it anymore and acts out violently against the bully.[6]  Schorling sought to offer the testimony of Glen Stutsky, a professor at Michigan State University, who is an expert in teenage bullying. (I, 14).  Professor Stutsky would have been able to testify about the dynamics of teenage bullying, why it happens, how it happens, and the results of not dealing with it. (I, 14).  Counsel sought to present the testimony of Schorling's counselor, Paul Rodriquez, to show how Schorling made attempts to avoid confrontation with Lambert.[7]  This testimony was relevant to Schorling's state of mind when he assaulted Lambert and whether he had the intent to murder her.

---

[6]   Studies suggest that like the battered spouse syndrome, teenage bullying can cause victims to act out violently. See e.g. "Teenage Bully & Violence," www.youthdevelopment.org/download/YouthConnectionBullying.pdf, (Institute for Youth Development); "Bullying," www.safeyouth.org/scripts/teens/bullying.asp, (National Youth Violence Prevention Resource Center); "How Mean Can Teens Be?" www.abcnews.go.com/Primetime/story?id=2421562&page=1; "Crime, Teens, and Trauma," www.ncvc.org/tvp/main.aspx?dbname=Bullying.

[7]   See page 4 of Response to Plaintiff's Motion in Limine to Prohibit Defendant from Presenting Mental Defect defense other than Insanity.

Defense counsel made it clear that the testimony was not to have Schorling escape punishment for what happened, but rather to explain why he reacted the way he did to Lambert's abusive comments in Croswell shortly before the incident. (I, 14-15, 17-19).  Teenage bullying is an issue that is only now coming to the forefront, much like the battered spouse syndrome, which reached public awareness over a decade ago.

Teenage bullying is similar to the battered spouse syndrome because it seeks to explain the inexplicable – why someone would do such a violent act. The Michigan Court of Appeals described the "battered woman syndrome" in *People v Wilson*, 194 Mich. App. 599, 603, 487 N.W.2d 822 (1992), where it said:

> The 'battered woman syndrome' generally refers to common characteristics appearing in women who are physically and psychologically abused by their mates.  The typical pattern of violence consists of three recurrent phases of abuse: a tension-building stage, characterized by minor abuse; an acute battering stage, characterized by uncontrollable explosions of brutal violence; and a loving respite stage, characterized by calm and loving behavior of the batterer, coupled with pleas for forgiveness.  The continued cycle of violence and contrition results in the battered woman living in a state of learned helplessness.…  The battered woman lives with constant fear, coupled with a perceived inability to escape.  Eventually, she comes to believe that her only options are enduring the abuse, striking back, or committing suicide." *Wilson*, at 603, citations omitted.

Similar to victims of the battered spouse syndrome, victims of teenage bullying have the overwhelming feeling of helplessness that leads to the drastic option of striking back. Schorling had this sense of helplessness and desperation when he talked to his parents while they were alone in the interrogation room at the police station. (II, 143-144). In the videotape of that conversation Schorling said he just wanted it to stop and that no one could help him. (II, 144). The testimony of Professor Stutsky would have put these statements in their proper context and given the jury the information they needed to decide whether Schorling intended to murder Lambert or whether he only intended to harm her.

In *Wilson*, the Michigan Court of Appeals held that the battered spouse syndrome was admissible, but limited it to testimony about the syndrome, not the particular defendant. *Id.* at 605. Based on *Wilson* defense counsel offered to limit the testimony about teenage bullying syndrome to the syndrome and not be about whether Schorling was a victim of it. (I, 17-19). But the trial court still refused to allow Schorling's counsel to present evidence of the teenage bullying syndrome thereby depriving the jury of essential information needed for them to fairly decide whether Schorling had the intent to murder or some lesser intent. Thus the decision of the Michigan courts precluding this

18

evidence violated Schorling's Fourteenth Amendment due process right to present a defense.

## Unreasonable application of federal constitutional law

The trial court as well as the Michigan Court of Appeals relied upon the *Carpenter*[8] case to deny defense counsel's request to present the evidence regarding the lack of frontal lobe development in adolescents and the teenage bullying syndrome evidence.  In *Carpenter*, the Michigan Supreme Court held: "[T]he Legislature has enacted a comprehensive statutory scheme setting forth the requirement for and the effects of asserting a defense based on either mental illness or mental retardation.  We conclude that, in so doing, the Legislature has signified its intent not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent." *Id*. at 241.   In Schorling's case the Michigan courts broadly interpreted the *Carpenter* decision to preclude any challenge to the ability of a defendant to form the specific intent charged unless it is a mental illness or mental retardation.  By interpreting *Carpenter* so broadly, the Michigan courts violated Schorling's fundamental due process right to present a defense.  As Justice Kelly noted in her dissent to *Carpenter*:

---

[8]   464 Mich. 223; 627 NW2d 276 (2001).

"… although the Legislature has required proof beyond a reasonable doubt of mens rea, the majority has rendered inadmissible evidence relevant to negating the mens rea.  In so doing, it has foreclosed any meaningful challenge to the prosecution's proofs.  With respect to specific intent crimes, at least, I believe that this 'cut[s] against our traditional concept of the adversary system' and 'downgrades the prosecution's burden to something less than that mandated by due process of law.'" *Carpenter*, at 246 quoting *Hendershott v People*, 653 P.2d 385, 393 Colo. 1982) [emphasis added].  The denial of Schorling's physical lack of development defense and the denial of Schorling's request to present evidence that explained his mental state when he assaulted Lambert is proof that Justice Kelly's due process concerns about the majority holding in *Carpenter* were valid. The broad interpretation of the *Carpenter* holding in this case is an unreasonable application of established federal law.

The Michigan Supreme Court in *Carpenter* relied on *Fisher v United States*, 328 U.S. 463 (1946) to support its preclusion of any defense other than insanity or mental retardation to the specific intent element of a crime. In *Fisher,* the United States Supreme Court approved a trial court's refusal to give an instruction bearing on whether a defendant acted with the requisite

specific intent.[9]  But six decades of subsequent due process decisions starting with *In Re Winship* and continuing through *Martin v Ohio*, 480 U.S. 228 (1987) puts the continued viability of the *Fisher* decision in serious doubt. The Colorado Supreme Court summed up this point by saying: "[W]hile it may be permissible to permit a jury to infer an essential ingredient of a crime from a proven fact so long as there is a rational connection between the proven fact and the inferred fact…it is quite another matter to insulate this ingredient from disproof by defense evidence.  A rule precluding the defendant from contesting the culpability element of the charge would render the prosecution's evidence on that issue uncontestable as a matter of law, in derogation of the presumption of innocence and the constitutional requirement of prosecutorial proof beyond a reasonable doubt." *Hendershott,* at 391.  The broad rule of *Carpenter*, which precludes any defense to the ability to form specific intent that is not insanity or mental retardation is an unreasonable application of established federal law on the due process right to present a defense.  Therefore Michigan's preclusion of Schorling's defenses violated Schorling's federal constitutional right to due process.

---

[9]  Fisher requested an instruction that in assessing whether the defendant 'deliberated' for first degree murder that it consider defendant's chronic alcoholic nature, his limited intellect, his limited judgment and comprehension as well as his race. *Fisher*, at 470-471.

## Conclusion

Petitioner Schorling tried to assert the defense that he physically lacked the ability to form the specific intent to murder as a means of challenging the prosecutor's proofs on the mens rea issue.  Petitioner also tried to introduce testimony that would have established that he exhibited all of the characteristics of a teen who was the victim of teenage bullying.  This evidence would have given the jury a context for Schorling's inexplicable actions and helped them to determine if in fact he had the specific intent to murder.  All of the defense evidence would have been a means of challenging the prosecutor's proofs on the mens rea element.  The trial court precluded Petitioner from doing so because it felt bound by the broad ruling in *Carpenter*.  The Michigan Supreme Court's reliance on *Fisher v United States* to keep all defenses to the mental element of specific intent out of a criminal trial is an unreasonable application of established federal law on the Fourteenth Amendment right to a defense.  Therefore, Petitioner Schorling is being held in violation of his federal constitutional rights and a Writ of Habeas Corpus should issue vacating his Assault with Intent to Murder conviction.

# RELIEF REQUESTED

THEREFORE, Petitioner Eric Schorling requests that Respondent be required to appear and answer the allegations of this Petition, and that after full consideration this Court relieve Petitioner Schorling of the unconstitutional restraint on his liberty, and that this Court grant oral argument, and issue an opinion finding that he is entitled to a new trial where he will be able to present the defenses that he was not physically capable of forming the specific intent due to a lack of frontal lobe development and that he was the victim of teenage bullying, as well as such other, further, and different relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

**ARTHUR GARTON P-37482**
Trial Attorney for Petitioner
38550 Garfield, Suite A.
Clinton Twp., MI 48038
(586) 226-3100

Dated: 29 July 2008      /s/**ROSEMARY GORDON PÁNUCO**
Attorney for Petitioner Eric Schorling
7320 N. La Cholla Blvd, Ste.154-PMB 310
Tucson, AZ 85741-2354
(520) 797-6928
appeals1@aol.com
Mich. Bar No. **P-33275**

23